IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | Criminal Action No. 3:05-CR-081(3)-L |
| | § | |
| GREGORY LEAVELL WEATHERALL, a/k/a "Stump." | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

In a two-count superseding indictment filed October 4, 2005, the United States charged Defendant Gregory Leavell Weatherall a/k/a "Stump" ("Defendant" or "Weatherall") with intentionally and knowingly conspiring with others, known and unknown to the grand jury, to possess with intent to distribute and distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base, a Scheduled II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 (Count I), and with knowingly carrying and possessing a firearm during and in relation to and in furtherance of the commission of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count II). The parties tried this case to the court on June 26, 2006 and June 27, 2006.[1] Having carefully considered the testimony and evidence admitted at trial, as well as applicable law, the court finds Defendant **guilty** beyond a reasonable doubt of the charges set forth in Count I of the superseding indictment and **not guilty** of the charges set forth in

[1]On June 23, 2006, the court held a hearing on Defendant's Waiver of Right to Trial by Jury and Motion for Court Approval, filed June 20, 2006. At the hearing, the court questioned Defendant, along with his counsel, and determined that Defendant's waiver of his right to trial by jury was voluntary and knowing, and not the result of any coercion. Counsel for the Government informed the court that the Government had no objection to Defendant's waiver. After hearing argument of counsel, and after determining that Defendant's waiver was voluntary and knowing, the court allowed Defendant to waive his right to a jury trial pursuant to Fed. R. Civ. P. 23.

Count II of the superseding indictment. The court issues this memorandum opinion and order in support of its verdict.[2]

## I. Count I

Count I of the superseding indictment charges that:

> Commencing on or about January 1, 2003, and continuing thereafter until on or about April 5, 2005, in the Dallas Division of the Northern District of Texas, defendant Gregory Leavell Weatherall, a/k/a "Stump," did intentionally and knowingly combine, conspire, confederate, and agree with other persons known and unknown to the Grand Jury, to possess with intent to distribute and distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base, a Scheduled II controlled substance, in violation of 21 U.S.C. § 841(a)(1). All in violation of 21 U.S.C. § 846.

Superseding Indictment ¶ 1. The court first sets forth the applicable law, and then addresses the evidence presented at trial.

### A. Title 21 U.S.C. §§ 841(a)(1) & 846

Title 21 U.S.C. § 841(a)(1) makes it "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]" Title 18 U.S.C. § 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those proscribed for the offense, the commission of which was the object of the attempt or conspiracy."

[2] Pursuant to Fed. R. Crim. P. 23(c), "[i]n a case tried without a jury, the court must find the defendant guilty or not guilty. If a party requests before the finding of guilty or not guilty, the court must state its specific findings of fact in open court or in a written decision or opinion." Neither party requested specific findings of fact. Accordingly, the court is under no obligation to state its specific findings of fact.

To convict Weatherall for possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) , the Government must prove that Weatherall (1) possessed illegal drugs, (2) knowingly, and (3) with intent to distribute. *See United States v. Elwood*, 993 F.2d 1146, 1149 (5th Cir. 1993) (and cases cited therein). "Possession may be actual or constructive; constructive possession is 'the knowing exercise of, or knowing power or right to exercise, dominion and control over' the contraband." *Id.* (footnote and citation omitted). *Id.* To convict Weatherall of conspiracy to possess with intent to distribute crack cocaine under 21 U.S.C. § 846, the Government must prove (1) an agreement existed between two or more persons to violate narcotics laws; (2) Defendant knew of the conspiracy and intended to join it; and (3) Defendant voluntarily joined in the conspiracy. *See id.* at 1150 (and cases cited therein); *United States v. Dean*, 59 F.3d 1479, 1485 (5th Cir. 1995) (and cases cited therein). "The Government need not prove these elements through direct evidence; the jury [or trier of fact] may infer each element of a conspiracy through circumstantial evidence." *Dean*, 59 F.3d at 1481. "[W]hile circumstantial evidence may be particularly valuable in proving the existence of the conspiratorial agreement, [the Fifth Circuit] will not lightly infer a defendant's knowledge of and participation in a conspiracy." *Id.* "[P]lacing a defendant in a climate of activity that reeks of something foul is not enough to support a conspiracy conviction." *Id.* (internal punctuation omitted).

A party to a continuing conspiracy may be responsible for a substantive offense committed by a co-conspirator, even though that party does not participate in the substantive offense or have any knowledge of it. *Pinkerton v. United States*, 328 U.S. 640, 647 (1946). Otherwise stated, "[o]nce the conspiracy and a particular defendant's knowing participation in it has been established beyond a reasonable doubt, the defendant is deemed guilty of substantive acts committed in

furtherance of the conspiracy by any of his criminal partners. *United States v. Sullivan*, 578 F.2d 121, 122-23 (5th Cir.1978). "For a defendant to be found guilty under *Pinkerton* for an offense committed by a co-conspirator, the offense must also have been reasonably foreseeable to the defendant." *Dean*, 59 F.3d at 1490 n.1.

**B. Discussion**

Based on the testimony and evidence presented at trial, the court finds that the Government has presented overwhelming evidence of Weatherall's guilt beyond a reasonable doubt of the crimes charged in Count I. Although the court is under no obligation to set forth specific factual findings (*see supra* note 2), the court will provide a brief recitation of the evidence upon which it bases its guilty verdict. Several pieces of evidence and key testimony support the court's finding of guilt beyond a reasonable doubt. First, the court considered the testimony of the Government's witnesses, and the testimony of Weatherall himself. Witnesses testifying for the Government regarding Weatherall's involvement in a conspiracy to possess with intent to distribute crack cocaine included, among others, Weatherall's co-Defendants Carlos Heath, a/k/a "Poochie," a/k/a "Big-P" ("Heath") and Luke Lorenzo Nelson, a/k/a "Little Luke" ("Nelson"), confidential informants Ben Robertson ("Robertson") and Tony Tunson ("Tunson"), and Cornell Wilson, Jr. ("Wilson"), a forensic chemist for the Drug Enforcement Agency ("DEA"). Weatherall was the only witness who testified on behalf of the defense.

The evidence presented at trial shows that in or around August 2004, the City of Greenville Police Department in Greenville, Texas, in tandem with the DEA, established a Mobile Enforcement Team ("MET") to investigate increased narcotics activity and related crime in Greenville. Confidential informants Robertson and Tunson (both of whom have a criminal history), agreed to

assist MET and set up numerous purchases of crack cocaine from Heath, Nelson, Weatherall, and others, all dealers in crack cocaine that Robertson and Tunson knew from living in Greenville. Robertson testified, and the evidence shows, that he made the following purchases of crack cocaine from Weatherall and Nelson. On December 1, 2004, Weatherall sold Robertson 28.3 grams of crack cocaine with a net weight of cocaine base in the amount of 2.8 grams in Robertson's truck parked in front of 3611 Spencer Street. *See* Gov't Exs. 6, 7, 12, 13. On December 7, 2004, Weatherall sold Robertson 25.6 grams of crack cocaine with a net weight of cocaine base in the amount of 1.1 grams (in addition to a .38 caliber pistol) from 3611 Spencer Street. *See* Gov't Exhs. 20-32. On December 15, 2004, Robertson purchased 34.9 grams of crack cocaine with a net weight of cocaine base in the amount of 9.6 grams from Nelson at 3611 Spencer Street. *See* Gov't Exhs. 35-39.

Tunson testified, and the evidence shows, that on December 15, 2005, he went to 3611 Spencer Street to purchase crack cocaine from Heath, who was not at the location. Instead, Tunson purchased 79.7 grams of crack cocaine with a net weight of cocaine base in the amount of 45.8 grams at 3611 Spencer Street from Nelson. Weatherall was present at 3611 Spencer Street during the drug transaction and spoke with Tunson regarding the weight of drugs he might purchase with $1200, and also asked for a "dit-dot" from Tunson following the sale. *See* Gov't Exhs. 44-50. According to testimony from Tunson and Nelson, a "dit-dot" was a small piece of crack cocaine given sometimes by a purchaser to a seller. Tunson further testified, and the evidence shows, that on December 28, 2004, Tunson went to Heath's home at 4606 Third Street in Greenville, Texas and purchased 110.1 grams of crack cocaine with a net weight of cocaine base in the amount of 83.2 grams from Heath. *See* Gov't Exhs. 55-58.

Although the court would not normally find these confidential informants highly credible in light of prior criminal records and questionable motives for testifying, having observed Robertson's and Tunson's demeanor, and having reviewed videotapes admitted into evidence corroborating their respective testimony, the court finds that both Robertson and Tunson are credible witnesses in this case, and the court has no reason to doubt the accuracy of their testimony.

Heath and Nelson, Weatherall's co-Defendants, both testified on behalf of the Government that Weatherall helped them sell crack cocaine from 3611 Spencer Street in Greenville, Texas and later from 2205 Gordon Street in Greenville, Texas, between in or around August 2004 and ending in December 2005. Nelson testified that in or around August 2004, he met Weatherall at a convenience store named the Sugar Hill Express in Greenville, Texas. Weatherall was seeking to recruit Nelson to work for Heath selling crack from 3611 Spencer Street, instead of for his prior employer, Zoderick Jackson, a competing crack cocaine dealer in Greenville. Weatherall then called Heath and arranged for a meeting the next day between Nelson and Heath, at which he was present. Heath agreed to pay Nelson weekly in cash, but testified that he paid Weatherall primarily in drugs. Both Weatherall and Nelson had keys to 3611 Spencer Street. Weatherall had clothing that he kept there, and the utilities were in his name. Although both Heath and Nelson testified that they would not trust Weatherall to sell large quantities of drugs in light of his addiction to crack cocaine, both testified that Weatherall acted as a "look-out" for them, made sure nothing happened to Nelson, and also was responsible for recruiting potential customers for them. Nelson testified that even though he ultimately sold the crack cocaine to Tunson at 3611 Spencer Street on December 15, 2004, Weatherall also participated in the sale, and asked Tunson for a "dit-dot" following the sale. Videotapes of the drug transactions on December 1, December 7, and December 15, 2004,

corroborate Heath's and Nelson's testimony that Weatherall sold crack cocaine along with Nelson and Heath from 3611 Spencer Street. Finally, both Heath and Nelson testified that Weatherall helped to set up the surveillance system at 3611 Spencer Street, and to implement other prophylactic measures to keep police from entering, including reinforced bars on the doors. Even taking into account the criminal records of both Heath and Nelson, and that they have both pleaded guilty in this case to violations of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, in light of the corroborating videotape evidence, the general consistency between their respective testimony, and the testimony provided by Robertson and Tunson, the court finds their testimony credible.

The court also heard testimony from Michael Johnston, a police officer for the City of Greenville. Johnston testified that on January 5, 2005, he engaged in the traffic stop of a car being driven by Nelson, in which Antoinette Williams ("Williams") was a passenger. During a subsequent search of the car, he recovered 67.6 grams of crack-cocaine after removing the center console near the gear shift. Luke Nelson testified that, contrary to what he had told police at the time of arrest, neither the car nor the drugs inside belonged to Weatherall.

Finally, the Government presented the testimony of Cornell Wilson, Jr., a forensic chemist for the DEA. Wilson testified regarding the accuracy and content of the laboratory reports that he prepared, which set forth the weight of the drugs seized by the DEA during the above-referenced transactions, as well as the amount of cocaine base present. *See* Exs. 13, 24, 39, 50, 58, 64.

The court also heard testimony from Weatherall himself, who testified that he was "good for" conspiring to sell 3.7 grams of crack cocaine to Robertson on December 1 and December 7, 2004. He also testified he was "good for" the gun, apparently referring to the pistol he sold to Robertson on December 7, 2004.

Having considered the above-cited testimony, the laboratory reports and the totality of the evidence, and in light of the applicable law, the court finds that the Government has proved beyond a reasonable doubt that Weatherall, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, intentionally and knowingly conspired to possess with intent to distribute and distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base, a Scheduled II controlled substance. The court further finds that the evidence establishes beyond a reasonable doubt that Weatherall is accountable for 142.3 net grams of cocaine base (278.6 grams gross weight). While it is true that Weatherall did not participate in all of the above-described drug transactions, as a party to a continuing conspiracy with Nelson and Heath, he is responsible for the substantive offenses committed by his co-conspirators. *See, e.g., Pinkerton*, 328 U.S. at 647.

The court finds, however, that the Government has failed to prove that Weatherall should be held accountable for the 67.6 grams of crack cocaine seized on January 5, 2005, containing cocaine base with a net weight of 11.1 grams (*see* Exs. 62, 64). The evidence shows that on January 5, 2005, Officer Johnston stopped a vehicle being driven by Nelson, in which Williams was a passenger, for failure to stop at a stop sign. During a subsequent search of the car, he recovered 67.6 grams of crack-cocaine from beneath the center console. At trial, Luke Nelson testified that, contrary to what he had told police at the time of arrest, neither the car nor the drugs inside belonged to Weatherall. Without more, the court cannot attribute the amount of crack cocaine in the car to Weatherall. The crack cocaine could just have easily belonged to Williams, or have been for personal consumption by the car's occupants, rather than distribution. In short, the Government has failed to show enough of a nexus between this incident and the remainder of the conspiratorial acts, or that Nelson's and Williams's offense was reasonably foreseeable to Weatherall. *See Dean*, 59

F.3d at 1490 n.1 ("For a defendant to be found guilty under *Pinkerton* for an offense committed by a co-conspirator, the offense must also have been reasonably foreseeable to the defendant.")

## II. Count II

Count II of the superseding indictment charges that Defendant knowingly carried and possessed a firearm during and in relation to and in furtherance of the commission of a drug trafficking crime, namely, the crimes charged in Count I, in violation of 18 U.S.C. § 924(c)(1)(A). Before the court considers the evidence pertaining to Count II, the court must address Defendant's request for an entrapment defense with regard to Count II of the superseding indictment.

### A. Entrapment

As stated by the Fifth Circuit:

> The core question regarding entrapment is whether the criminal intent originally resided in the defendant; in other words, whether the government planted the seed of criminality, or instead whether the defendant was willing to perpetrate the offense and the government simply provided the opportunity. Entrapment only arises where the Government, in its zeal to enforce the law, implants in an innocent person's mind the disposition to commit a criminal act, and then induces commission of the crime so that the Government may prosecute. Therefore, to be entitled to an entrapment instruction [or defense], a defendant bears the burden of presenting evidence of (1) his lack of predisposition to commit the offense *and* (2) some governmental involvement more substantial than simply providing an opportunity or facilities to commit the offense.

*United States v. Gutierrez,* 343 F.3d 415, 419 (5th Cir. 2003) (internal punctuation and footnote omitted) (emphasis added). "[T]he Government may use undercover agents to enforce the law," and "artifice and stratagem may be employed to catch those engaged in criminal enterprises." *United States v. Ogle*, 328 F.3d 182, 185 (5th Cir. 2003) (citation omitted). Weatherall has the "burden of providing a basis for reasonable doubt on the ultimate issue of whether criminal intent originated

with the government." *United States v. Gonzalez*, 166 Fed. Appx. 124, 128-29 (5th Cir.), *cert. denied*, 126 S.Ct. 2883 (2006) (and cases cited therein). Defendant has failed to meet his burden and is therefore not entitled to an entrapment defense.

Weatherall, in particular, has failed to show Government involvement more substantial than simply providing the opportunity for commission of the offense. Ben Robertson, a Government informant, testified at trial that he was contacted by Wesley Russell, a Narcotics Investigator working in tandem with the City of Greenville Police Department, regarding acting as a confidential informant to assist in a narcotics' investigation in Greenville, Texas. According to Robertson, in his role as a confidential informant, he was instructed to ask Weatherall whether, in addition to crack cocaine, Weatherall had a pistol he could purchase. Other than Robertson seeking to purchase the pistol at the behest of the investigators, the evidence shows no further involvement on the part of the Government. As already stated, that the Government provided an opportunity or facilities to commit the offense, without more, is not enough for a defendant to meet his burden. *Id.* Moreover, even were Defendant to have shown substantial governmental involvement (which he has not), he also failed to establish that he lacked a predisposition to commit the offense. The evidence before the court shows that Weatherall was street savvy and offered to sell Robertson a pistol on December 1, 2004, immediately after Robertson asked him if he had a pistol for sale. *See* Gov't Exhs. 4 and 5. Robertson testified that he told Weatherall he did not have enough money to make the purchase that day. This evidence demonstrates to the court that Defendant, far from lacking a predisposition to sell a pistol, was prepared to sell Robertson a pistol that same day. Finally, the court determines that Defendant's testimony that he sold a pistol to Robertson for the purpose of killing hogs is irrelevant. Regardless of the purpose to which he believed the pistol would be put, Defendant has

not shown he lacked the predisposition to sell the weapon to Robertson. In short, based on this evidence and testimony at trial, the court determines that Defendant has failed to meet his initial evidentiary burden, producing neither substantial evidence of the lack of a predisposition to commit the offense, nor government actions that are more than simply providing him an opportunity to sell a pistol. Accordingly, Weatherall is not entitled to an entrapment defense.

**B. Title 18 U.S.C. § 924(c)(1)(A)**

Title 18 U.S.C. § 924(c)(1)(A) provides:

> [A]ny person who, *during and in relation to* any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, *in furtherance of* any such crime, possesses a firearm, shall . . . (i) be sentenced to a term of imprisonment of not less than 5 years.

18 U.S.C. § 924(c)(1)(A) (emphasis added). Count II of the superseding indictment charges that Defendant knowingly carried and possessed a firearm during and in relation to and in furtherance of the commission of a drug trafficking crime, namely, the crimes charged in Count I, in violation of 18 U.S.C. § 924(c)(1)(A). The court first addresses the Government's contention that Weatherall possessed a firearm "in furtherance of" a drug trafficking crime. The Government has presented no evidence that Weatherall possessed a firearm "in furtherance of" a drug trafficking crime. The possession of the firearm simply did not further, assist, facilitate, or make easier the sale of any drugs. Indeed, the record reflects no evidence of a gun being present during the earlier transaction between Weatherall and Robertson, but only during the transaction in which the sale of the pistol took place. The sale of the gun was for cash. Had, for example, Robertson traded drugs for the gun, without a doubt such a transaction would have been "in furtherance of" a drug trafficking offense.

Accordingly, the Government fails to prove beyond a reasonable doubt the "in furtherance of" prong of the statute.

The court now addresses the Government's contention that Weatherall "carrie[d]" a firearm "during and in relation to" a drug trafficking crime.[3] "By its terms, the statute requires the prosecution to make two showings. First, the prosecution must demonstrate that the defendant 'use[d] or carrie[d] a firearm.' Second, it must prove that the use or carrying was 'during and in relation to' a 'crime of violence or drug trafficking crime.'" *Smith v. United States*, 508 U.S. 223, 227-28 (1993). In defining "in relation to," which is not defined in § 924, the Court looked to the plain meaning of the words. *Id.* at 228 ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning.") (citation omitted). The Court in *Smith* defined "in relation to" under § 924(c)(1), as follows:

> According to Webster's, "in relation to" means "with reference to" or "as regards." The phrase "in relation to" thus, at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence. As one court has observed, the "in relation to" language "allay[s] explicitly the concern that a person could be" punished under § 924(c)(1) for committing a drug trafficking offense "while in possession of a firearm" even though the firearm's presence is coincidental or entirely "unrelated" to the crime. Instead, the gun at least must "facilitat [e], or ha[ve] the potential of facilitating," the drug trafficking offense.

*Id.* at 237-38 (internal citations and punctuation omitted).

Having considered the evidence, testimony and applicable law, the court finds that the Government has failed to prove beyond a reasonable doubt that Weatherall carried a firearm "during

---

[3]Title 18 U.S.C. § 924(c)(1) is not limited to those situations in which a gun is "carrie[d]"; it applies equally when a gun is "use[d]." In this case, however, the superseding indictment does not allege that Weatherall "use[d]" a firearm. Accordingly, the court does not consider whether the evidence might support the conclusion that Weatherall "use[d]" the firearm within the meaning of § 924(c)(1).

and in relation to" a drug trafficking crime, as required by the plain language of 18 U.S.C. § 924(c)(1)(A). The Government presented Robertson's testimony and videotape evidence demonstrating that, as part of the MET's investigation, Robertson sought to purchase a gun from Weatherall during their December 1, 2004 meeting. *See* Gov't Ex. 4-5. On December 7, 2004 at 3611 Spencer Street, after numerous discussions, both in person and *via* cellular telephones, Weatherall sold Robertson a .38 caliber pistol and ammunition for $300. During that same visit to 3611 Spencer Street, Robertson paid Weatherall $60 for 25.6 grams of crack cocaine with a net weight of cocaine base in the amount of 1.1 grams. *See* Gov't Exhs. 20-32. Based on this evidence, the *sole* reason for the gun's presence at 3611 Spencer Street on December 7, 2004 was the confidential informant's request to Weatherall to sell him a gun. The gun present at the illegal drug sale was not carried by Weatherall to ensure that the drug sale took place, to intimidate Robertson, or to protect himself or the illegal drugs. The record does not reflect that the gun could have been used for one of these purposes. Moreover, as previously stated, this was not a situation in which the gun was traded for illegal drugs, or a situation in which the drug sale was contingent or conditioned upon the sale of the gun. Otherwise stated, the presence of the gun at the same time Weatherall sold crack cocaine to Robertson was fortuitous, and not "in relation to" the sale of crack cocaine to Robertson that same day. Given the relationship between Robertson and Weatherall, the sale of the gun could have occurred on *any* given day. In the words of Justice O'Connor in *Smith*, the presence of the gun was "coincidental" to the sale of crack cocaine, and did not "facilitat [e], or ha[ve] the potential of facilitating," the drug trafficking offense. *See Smith*, 508 U.S. at 237-38. To say that the sale of the gun in this case made the sale of crack cocaine easier, or that such sale could have made the sale of crack cocaine easier, is not supported by the evidence and requires more than a

quantum leap of logic, which the court cannot make. Accordingly, the court finds Defendant not guilty of Count II of the superseding indictment.[4]

## III. Conclusion

For the reasons stated herein, the court determines that the Government has established beyond a reasonable doubt that Defendant Gregory Leavell Weatherall is guilty of the charges set forth in Count I of the superseding indictment, namely, that he intentionally and knowingly conspired to possess with intent to distribute and distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base, a Scheduled II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. Accordingly, the court finds Defendant Gregory Leavell Weatherall **guilty** of the charges set forth in Count I of the superseding indictment, and further finds that the evidence established beyond a reasonable doubt that he is accountable for 142.3 net grams of cocaine base (278.6 grams gross weight).

The court further determines that the Government has failed to prove beyond a reasonable doubt that Defendant Gregory Leavell Weatherall is guilty of the charge set forth in Count II of the superseding indictment, namely, knowingly carrying a firearm during and in relation to the commission of a drug trafficking crime, or possessing a firearm in furtherance of the commission of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Accordingly, the court finds Defendant Gregory Leavell Weatherall **not guilty** of the charge set forth in Count II of the superseding indictment, and **dismisses** Count II of the superseding indictment **with prejudice**. A scheduling order for sentencing will issue by separate order.

---

[4]Although Defendant testified on direct examination that he was "good for" the "gun," as pointed out by Weatherall's attorney, whether Defendant is guilty under § 924(c) is a legal question for the court.

**It is so ordered** this 31st day of July, 2006.

Sam A. Lindsay
United States District Judge